**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MULTI-VET LTD., )<br><br>       **Plaintiff and** )<br>       **Counterclaim Defendant,** )<br><br>  **v.** )<br><br>**PREMIER PET PRODUCTS, INC.,** )<br><br>       **Defendants and** )<br>       **Counterclaim Plaintiff.** )<br>       ) | **Civil Action No. 08-cv-03251 (LMM)**<br><br>**Declaration of Elizabeth Zidones in**<br>**Support of Defendant's Motion for a**<br>**Preliminary Injunction** |

I, Elizabeth Zidones, do hereby state as follows:

1.      I am an attorney with the firm of Merchant & Gould, P.C., counsel for Defendant Premier Pet Products, LLC ("Premier"), in the captioned matter, and I submit this declaration in conjunction with Defendant Premier Pet Products LLC's, Motion For Preliminary Injunction.

2.      Attached hereto as **Exhibit 20** is a true and correct copy of Defendant and Counterclaim Plaintiff's Request for the Production of Documents to Plaintiff and Counterclaim Defendant.

3.      Attached hereto as **Exhibit 21** is a true and correct copy of the

unpublished decision, *Direct Mktg Educ. Found. v. John Wiley Sons, Inc.*, No.

08Civ1464, 2008 U.S. Dist. LEXIS 18535, at *3-5 (S.D.N.Y. Mar. 11, 2008).

4.      Attached hereto as **Exhibit 22** is a true and correct copy of the

unpublished decision, *Time Warner Cable, Inc. v. DirectTV, Inc*., No. 06Civ14245, 2007

U.S. Dist. LEXIS 32672, at *6-7 (S.D.N.Y. May 2, 2007).


I declare under penalty of perjury that the foregoing is true and correct.


_July 10, 2008_____                           _____s/Elizabeth Zidones_____
  Date                                              Elizabeth Zidones

Keith E. Sharkin
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Attorneys for Defendant and Counterclaim Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MULTI-VET LTD., | ) ) ) ) | |
| Plaintiff/Counterclaim Defendant, | ) ) | CIVIL ACTION No. 08-cv-03251 (LMM) |
| v. | ) ) | |
| PREMIER PET PRODUCTS, INC., | ) ) ) | **DEFENDANT AND COUNTERCLAIM PLAINTIFF'S REQUEST FOR THE** |
| Defendant/Counterclaim Plaintiff. | ) ) ) | **PRODUCTION OF DOCUMENTS TO PLAINTIFF AND COUNTERCLAIM DEFENDANT** |

TO:        MULTI-VET LTD;

AND TO:    Lawrence E. Abelman
           Abelman, Frayne & Schwab
           666 Third Avenue
           New York, NY 10017
           *Attorneys for Plaintiff and Counterclaim Defendant*

COUNSEL:

PLEASE TAKE NOTICE that pursuant to Rule 34 of the Federal Rules of Civil

Procedure, and the Local Rules of the United States District Court for the Southern

District of New York, Defendant/Counterclaim Plaintiff Premier Pet Products, LLC

("Premier") hereby requests that you furnish documents responsive to the following

requests within thirty (30) days after their service upon you, or within such earlier time as

1

# Exhibit 20

the parties may agree or the Court may order.  The requested documents and things

should be made available at the offices of King & Spalding LLP, 1185 Avenue of the

Americas, New York, New York 10036, or at a time and place agreed upon by counsel,

but no later than thirty (30) days from the date of service of this request.

## DEFINITIONS AND INSTRUCTIONS

In addition to the Uniform Definitions in Discovery Requests set forth in Local

Civil Rule 26.3, the following definitions apply to these Requests:

1.    The definitions contained herein, unless provided otherwise, apply to all

     discovery requests, including subsequent discovery requests.

2.    "Customer(s)" includes wholesalers, retailers, and end users.

3.    "The GENTLE SPRAY name and packaging" refers to the product identified

     in Exhibits A and B to Premier's Answer and Counterclaims.

4.    "You or your" refers, without limitation, to plaintiff and counterclaim

     defendant, Multi-Vet Ltd. and its direct and indirect parents, subsidiaries,

     affiliates, successors and assigns, and all of their officers, directors, principal

     owners, partners or shareholders, employees, agents, attorneys and

     representatives, or anyone acting on behalf of any of the foregoing,

     individually and collectively.  The group of persons falling under this

     definition include those persons falling under this definition in the past,

     present and during and throughout this lawsuit going into the future.

2

## REQUESTS

1.      All documents showing the amount of product bearing the GENTLE SPRAY name and packaging you have sold in the United States.

2.      All documents showing the amounts in United States dollars generated by the sales subject of Request No. 1.

3.      All documents showing when the sales subject of Request No. 1 occurred.

4.      All documents which identify the customers to whom the sales subject of Request No. 1 were made.

5.      All documents which identify the customers to whom you have marketed product in the United States bearing the GENTLE SPRAY name and packaging.

6.      All documents showing the amounts of your advertising, promotional and marketing expenditures devoted to developing sales of product bearing the GENTLE SPRAY name and packaging in the United States.

7.      All documents that describe and identify your plans, means, or methods to sell and market your anti-bark citronella collars in the United States from March 7, 2005 to the present.

8.      All documents showing the names under and packaging in which your anti-bark citronella collars were sold in the United States between March 7, 2005 and the present.

9.      All documents showing how many of your anti-bark citronella collars were sold in the United States between March 7, 2005 and the present, excluding those documents responsive to Request No. 1.

10.    All documents showing the amounts in United States dollars generated by the sales that are the subject of Request No. 9, excluding those documents responsive to Request No. 2.

11.    All documents showing when the sales that are the subject of Request No. 9 were made, excluding those documents responsive to Request No. 3.

12.    All documents showing the customers to whom the sales subject of Request No. 9 were made, excluding those document responsive to Request No. 4.

13.    To the extent they are different than those documents responsive to Request No. 5, documents describing or identifying the customers to whom you have marketed your anti-bark citronella collars in the United States since March 7, 2005.

14.    All documents showing the amounts of your advertising, promotional, and marketing expenditures devoted to developing sales of your anti-bark citronella collar in the United States since March 7, 2005.

15.    All documents and communications (internal and external to Multi-Vet) concerning any survey, consumer study, focus group, trademark search, whether formal or informal, market study, evaluation, or opinion regarding the GENTLE SPRAY mark.

16.    All documents showing any instance or occurrence in which Multi-Vet has received, from a customer, competitor, retailer, distributor or any other person or entity, any oral or written inquiry or comment regarding the relationship between Multi-Vet and Premier.

17.    All documents and communications concerning agreements between Multi-Vet and Premier.

18.    All documents and communications concerning negotiations between Multi-Vet and Premier relating to their agreements concerning dog training collars, including any draft agreements.

19.    All documents showing Multi-Vet's use of the GENTLE SPRAY mark, or any variation thereof, in connection with anti-bark collars.

20.    All documents relating to correspondence with any advertising or sales agent relating in any way to the GENTLE SPRAY name and packaging.

21.    All documents and communications with any vendor relating in any way to changes to packages of Multi-Vet anti-bark collars to include the GENTLE SPRAY name and packaging.

22.    All documents concerning Multi-Vet's decision to offer for sale each product bearing the GENTLE SPRAY name and packaging.

23.    All documents and things concerning Multi-Vet's past, present or future marketing plans for each product bearing GENTLE SPRAY name and packaging.

24.    All documents concerning the creating, design and development of labeling for each and every product bearing GENTLE SPRAY name and packaging.

25.    All documents relating to any product returns of Multi-Vet's anti-bark collars.

KING & SPALDING LLP

Dated: June 30, 2008

By: /s/ Keith E. Sharkin
   Keith E. Sharkin
   1185 Avenue of the Americas
   New York, New York 10036
   Telephone: (212) 556-2100
   Facsimile:  (212) 556-2222
   ksharkin@kslaw.com

Of Counsel:
Christopher J. Sorenson
Kristine M. Boylan
Elizabeth A. Zidones
MERCHANT & GOULD P.C.
80 South Eighth Street, Suite 3200
Minneapolis, Minnesota 55402-2215
Telephone:  (612) 332-5300
Facsimile:  (612) 332-9081

**Attorneys for Premier Pet Products, LLC**

LEXSEE 2008 U.S. DIST. LEXIS 18535

**DIRECT MARKETING EDUCATIONAL FOUNDATION, INC., Plaintiff, -against-
JOHN WILEY SONS, INC., Defendant.**

**08 Civ. 1464 (LMM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2008 U.S. Dist. LEXIS 18535**

**March 10, 2008, Decided
March 11, 2008, Filed**

**COUNSEL:** [*1] For Direct Marketing Educational Foundation, Plaintiff: Robert L. Sherman, LEAD ATTORNEY, Paul, Hastings, Janofsky & Walker LLP, New York, NY.

**JUDGES:** Lawrence M. McKenna, U.S.D.J.

**OPINION BY:** Lawrence M. McKenna

**OPINION**

*CORRECTED MEMORANDUM AND ORDER*

McKENNA, D.J.

**1.**

Plaintiff, Direct Marketing Educational Foundation, Inc. ("Plaintiff" or "DMEF"), commenced this action, seeking preliminary injunctive relief that would prohibit Defendant, John Wiley & Sons, Inc. ("Defendant" or "Wiley") from publishing a journal using Plaintiff's mark, JOURNAL OF INTERACTIVE MARKETING ("the Journal")(Registration No. 2,177,647), without first submitting the content thereof to DMEF for its approval of the Journal's quality. (Plaintiff's Memorandum in Support of Motion 1.) For reasons set forth below, Plaintiff's motion for preliminary injunctive relief is granted. [1]

1    The Court declines to follow Plaintiff's counsel's suggestion at oral argument that this Court, pursuant to F.R.C.P. 65, consolidate the preliminary injunction hearing with the trial on the merits. The Court will make no decision on the merits beyond the preliminary injunction motion which is at issue.

**2.**

DMEF and Wiley entered into a contract in August 1988 for the publication [*2] and distribution of the Journal by Wiley in conjunction with DMEF. (Compl. P 11.) Throughout the duration of the contract, Wiley was "responsible for the non-editorial affairs," while the DMEF-selected Editorial Board retained responsibility "for all editorial functions of the Journal receiving such guidance from DMEF . . ." (Compl. P 17.)

In February 2007 Plaintiff provided Wiley with a written notice of non-renewal of their contract. (Compl. P 27.) The parties established by contract that the initial term of the contract would end December 31, 2007, followed by a one-year transitional period. (Compl. P 18.) Plaintiff acknowledges that under the plain terms of the contract, Defendant has a license to use DMEF's mark as the title of its publication for a transitional period of one year following non-renewal by either party. (Compl. P 16.) The contract is silent, however, as to which party will have editorial control during the transitional year. Plaintiff argues that it should retain editorial control during the year of transition; the Defendant, in turn, argues that the contractual language, in addition to allowing for its continued publication by Wiley under the mark, bestows full [*3] editorial control upon Wiley as well.

Exhibit 21

**3.**

In the Court's view, both parties have been effective in articulating their arguments, particularly in light of the ambiguous contractual language. Ultimately, however, this is a question of trademark law, and the law with respect to the issue of quality control speaks quite clearly, irrespective of the contract's silence.

Federal courts within this jurisdiction have unequivocally declared it unlawful for that a trademark owner to grant of a license to a licensee for the use of a mark without the retention of supervisory control. *See Susser v. Carvel Corp.,* 206 F.Supp. 636, 641 (S.D.N.Y. 1962) ("It is well established that the owner of a trademark may license its use to another without abandoning his trademark. However, a naked license agreement without supervisory control over the product is invalid."); *see also Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dept. Stores, Inc.,* 299 F.2d 33, 35 (2d. Cir. 1962) ("[a naked license] is a fraud upon the public and unlawful"); *Embedded Moments, Inc. v. Int'l Silver Co.,* 648 F.Supp. 187, 193 (E.D.N.Y. 1986) ("a 'naked' license -- i.e., one without supervisory control [*4] over the use of the trademark -- is invalid"); *Weight Watchers of Quebec Ltd. v. Weight Watchers Intern., Inc.,* 398 F.Supp. 1047, 1056 (E.D.N.Y. 1975) ("In fact, under American law, a naked license without such supervisory control is invalid.").

The unwavering language of the applicable case law implies further that any contractual agreement allowing for the licensing of a trademark without the owner's retention of supervisory control would be considered a naked license, and therefore deemed invalid. So in the present case, even if the contract between the parties was written with the intention of conferring supervisory control upon Wiley during the transitional year, such language could never stand and would never be supported by the relevant case law.

There is one existing exception to the prohibition on naked licenses, allowing for a licensee to have supervisory control if the licensee has demonstrated past competence in a supervisory role with that particular product. "Prior cases establish 'that reliance upon the integrity of a licensee is sufficient to fulfill the control requirement where a history of trouble-free manufacture provides the basis for such reliance.' *Embedded Moments, supra,* at 194 [*5] (*quoting Syntex Lab., Inc. v. Norwich Pharmacal Co.,* 315 F.Supp. 45, 56 (S.D.N.Y. 1970), *aff'd,* 437 F.2d 566 (2d. Cir. 1971)). Such an exception is inapplicable in the present case as Wiley has never assumed a supervisory role regarding the Journal's editorial content for the nearly twenty year-duration of the contract between itself and DMEF.

**4.**

In light of the foregoing analysis, Plaintiff's motion for preliminary injunctive relief is hereby GRANTED. [2]

> 2    For purposes of deciding this motion, this Court did not consider Plaintiff's letter dated February 28, 2008, or Defendant's letters dated February 28 and 29, 2008.

Plaintiff is to submit a proposed order on two (2) days' notice to Defendant.

SO ORDERED.

Dated: March 10, 2008

/s/ Lawrence M. McKenna

Lawrence M. McKenna

U.S.D.J.

LEXSEE 2007 US DIST LEXIS 32672

**TIME WARNER CABLE, INC., Plaintiff, -against- DIRECTV, INC., Defendant.**

**No. 06 Civ. 14245 (LTS)(MHD)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2007 U.S. Dist. LEXIS 32672; 2007-1 Trade Cas. (CCH) P75,744**

**May 1, 2007, Decided
May 2, 2007, Filed**

**PRIOR HISTORY:** Time Warner Cable, Inc. v. DIRECTV, Inc., 2007 U.S. Dist. LEXIS 28209 (S.D.N.Y., Apr. 16, 2007)

**COUNSEL:** [*1] For Time Warner Cable Inc., Plaintiff: Karen Bee Geok Lim, Richard Owen Jackson, III, Sarah Elizabeth Zgliniec, Saul Benjamin Shapiro, Scott W. Parker, LEAD ATTORNEYS, Patterson, Belknap, Webb & Tyler LLP, New York, NY.

For DirectTV, Inc., Defendant: Jessica Anne Rose, Marc Laurence Greenwald, Quinn Emanuel Urquhart Olive & Hedges, New York, NY; Michael E. Williams, Quinn, Emanuel, Urquhart, Oliver & Hedges, LLP, Los Angeles, CA.

**JUDGES:** LAURA TAYLOR SWAIN, United States District Judge.

**OPINION BY:** LAURA TAYLOR SWAIN

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Plaintiff Time Warner Cable, Inc. ("Plaintiff" or "TWC") brought this action, asserting false advertising, deceptive business practices and breach of contract claims against Defendant DIRECTV, Inc. ("Defendant" or "DIRECTV"), pursuant to Section 43(a) of the Lanham Act, 15 U. S. C. § 1125(a), §§ 349 and 350-a of the New York General Business Law, and the common law. The Court has jurisdiction of the federal statutory claims raised in this matter pursuant to 28 U.S.C. §§ 1331

and 1343 and has supplemental jurisdiction of the related state law claims pursuant to 28 U.S.C. § 1367 [*2] . By Opinion and Order dated February 5, 2007, the Court granted TWC certain preliminary injunctive relief relating to the advertising of DIRECTV's services. A second preliminary injunction motion was denied by an Opinion and Order dated April 16, 2007.

Defendant now moves for an order requiring TWC to post a $ 1,000,000.00 bond, to protect DIRECTV in the event that it is determined that DIRECTV was wrongfully restrained by the Court's February 5, 2007 Opinion and Order granting TWC's first motion for a preliminary injunction barring the dissemination of certain DIRECTV television and internet advertisements. [1] *See Time Warner Cable, Inc. v. DIRECTV, Inc.,* 475 F. Supp. 2d 299, 2007 WL 412498 (S.D.N.Y. 2007). TWC counters that the bond should be no larger than $ 50,000.00. The Court has considered thoroughly the parties' written evidentiary and argumentative submissions. For the reasons that follow, Defendant's motion for a bond is granted, in the amount of $ 500,000.00.

[1] Counsel for DIRECTV was unable to offer a proposed bond amount or facts relevant to the determination as to the necessity of a bond at the January 31, 2007, oral argument on TWC's first preliminary injunction motion, but indicated that it would like to brief the bond issue supplementally after the issuance of an injunction, if any. *See* Tr. of January 31, 2007, oral argument at 49-50. The Court did not impose a bond requirement when it entered the February 5, 2007, preliminary injunction, as no evidence of harm had been presented at that point.

Exhibit 22

2007 U.S. Dist. LEXIS 32672, *3; 2007-1 Trade Cas. (CCH) P75,744

[*3] *BACKGROUND*

Familiarity with the general background and procedural history of this matter is presumed. *See Time Warner Cable, Inc. v. DIRECTV, Inc.,* 475 F. Supp. 2d 299, 2007 WL 412498 (S.D.N.Y. 2007) and *Time Warner Cable, Inc. v. DIRECTV, Inc.,* No. 06 Civ. 14245 (LTS), 2007 U.S. Dist. LEXIS 28209, 2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007).

DIRECTV arrives at its $ 1,000,000.00 bond figure by valuing brochures it says it can no longer disseminate at $ 260,000.00, tear out sheets at $ 80,000.00 and website changes at $ 4,000.00, for a total out of pocket cost of $ 344,000.00. DIRECTV then argues that it will suffer a further $ 600,000.00 due to, among other things, the uncertainty DIRECTV faces in trying to determine what is and is not permitted by the injunctive order, and "the competitive disadvantage by restricting DIRECTV's ability to advertise, as well as the additional resources that must be expended developing and renewing new advertisements that do not risk being interpreted in a manner inconsistent with the injunction." DIRECTV requests a bond in a total amount of no less than $ 1,000,000.00.

TWC counters that the alleged harm to DIRECTV from the injunction [*4] is *de minimis,* as the television commercials that were the principal subject of the injunction were discontinued before the injunction was entered. TWC argues that DIRECTV has not put forward credible evidence to support its out of pocket expense claims [2] and that its submission fails to exclude the possibility that it might be able to reuse the brochures and tear-out sheets later if DIRECTV is found to have been wrongfully enjoined. However, DIRECTV demonstrates in its reply papers that the materials contain time-sensitive programming references that would appear to make it difficult, if not impossible, to use them at a future time. *See* Williams Reply Decl. Ex. C at 2, 3, 6.

> 2   DIRECTV failed to provide copies of the brochures and tear-out sheets in its moving papers in support of this motion, but did provide them as attachments in its reply papers.

TWC also calls DIRECTV's claim for the additional $ 650,000.00 in damages "baseless." The affidavit of Jon T. Geiselman, DIRECTV's Senior Vice President [*5] of Advertising and Public Relations, which was submitted in support of the motion for a bond, provides little

concrete analysis of how that figure was reached, but instead refers generally to the type of work that DIRECTV will be performing to comply with the injunction, such as the development of new concepts and advertisements that comply with the injunction, and also to the "competitive disadvantage" DIRECTV believes it is suffering by reason of the injunction. (Geiselman Aff. PP 10-13.)

*DISCUSSION*

Federal Rule of Civil Procedure 65(c) provides in pertinent part that:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongly enjoined or restrained.

Fed. R. Civ. P. 65(c).

Rule 65(c) gives the district courts wide discretion to set the amount of a bond, and even to dispense with the bond requirement "where there has been no proof of likelihood of harm, or where the injunctive [*6] order was issued 'to aid and preserve the court's jurisdiction over the subject matter involved.'" *Doctor's Associates, Inc. v. Stuart,* 85 F.3d 975, 985 (2d Cir. 1996) (citations omitted). The bond is intended to afford security only for those damages, if any, that might be "proximately caused by the [wrongful] issuance of [an] injunction." *B.G. Soft Ltd. v. B.G. Soft Int'l Inc.,* No. Cv.-01-17 (RR)(VVP), 2002 U.S. Dist. LEXIS 13508, 2002 WL 1467744, *2 (E.D.N.Y. Apr. 29, 2002) (internal citations omitted). "In fixing the amount of security required, a court is not required to order security in respect of claimed economic damages that are no more than speculative." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners,* 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006). The burden is on the party seeking security to establish a rational basis for the amount of the proposed bond.

Here, DIRECTV has provided concrete evidence of its out of pocket expenditures to date, namely the $ 344,000.00 that it has paid for brochures and tear out sheets whose use is called into question by the injunction (and whose reuse is not possible due to time-sensitive

2007 U.S. Dist. LEXIS 32672, *6; 2007-1 Trade Cas. (CCH) P75,744

references) and also [*7] the changes it has made to its website as a result of the injunction. The Court is mindful that "[g]enerally, the amount of the bond posted is the limit that a wrongfully restrained party may recover. . . . Thus, in determination of the amount of the bond, the court should attempt to limit the possibility that a restrained party that is ultimately successful on the merits is not able to obtain adequate relief." *Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc,* 323 F. Supp. 2d 525, 541 (S.D.N.Y. 2004). If the injunction is found to have been wrongfully entered, and DIRECTV is able to mitigate its damages by using some of the materials at issue, then the entirety of the bond will not be needed for damages.

Likewise, the Court will provide DIRECTV some security for costs associated with restrategizing its advertising campaign and determining what materials are and are not in compliance with the injunction. However, the Court finds that DIRECTV's request for approximately $ 650,000.00 as security for dealing with those issues has not been adequately explained or documented and is, on this record, speculative at best.

Instead, the Court will direct Plaintiff to [*8] enter a bond in the total amount of $ 500,000.00 to reflect both the specific out of pocket expenses explained earlier and other reasonable costs associated with changes in DIRECTV's advertising campaigns that may be necessitated by compliance with the preliminary injunction Order.

*CONCLUSION*

For the foregoing reasons, Defendant's motion for a bond is granted. Plaintiff shall file its bond in the amount of $ 500,000.00 with the Clerk of Court by May 11, 2007.

SO ORDERED.

Dated: New York, New York

May 1, 2007

LAURA TAYLOR SWAIN

United States District Judge